In 1884;''Daniel L. Russell, 'Jr., was commissioned’ a. Captain in.Co. G, 36 Reg’.t. N#C. Troops. In Feb., 1864, ■be .was sentenced, by a general court martial ccto be.dis-missed from the service,” which sentence was approved by Gen. Wliiting, <c so^ar asto deprive bim of bis commission,” ánd tbe General granted bim tbe privilege of selecting another, company, if be desired to do' so, and gave bim leave of absence for thirty days. In» March, 1864, Russell, was appointed County Commissioner by the Justices of Brunswick cgunty, gave bond and-.entered upon tbe duties of. the office on tbe 11th of March ; tbe Governor, certified that he was a coifnty officer,' necessary' for tbe proper administration of tbe government of *tbe State'. Notwithstanding .his appointment, and the'Governor’s certificate, Gen. Whiting claimed-him as a private, liable to military service ; wheré- . upon be sued out a writ of habeas corpus, asserting bis right to exemption. . . ■ ' ■ ■
;The act of Congress', Hth February,’186.4, is a'general conscription law. By tbe first section, all white men, res'.idents of tbe Confederate States between tbe ages qf II and 50 are conscripted for 'the war. Tbe 2d section has reference to men between the ages of 18 and 45 ‘'now in-service,” and the'sole purpose obviously is to make a distinction between them and other conscripts b'y-retdining them in 'the same regiments, battalions' and’companies to which they hdonged at the passage of the apt, instead of-having them-' «nrollerl and sent to camp of instruction. There-is nothing in tbe act to show an intention to put- them on a different ' footing from other Conscripts in any other Respect, or to exclude them- from tbe operations of tbe provisions in relation to exemptions- It follows that the first ground taken in the return, to wit, that Russell being alréadV in service 'cannot be a’conscript, and, consequently,'is not embraced *464 by the provisions in gelation to exemptions, is untenable. So the question is : Does the 2d clause of the 10th section exempt one who is in ger^ice at the time he is elected or appointed a State officer ; a member of the Legislature, for instance ; or 'a 'State officer w^om the Governor may certify is neceSgary for the proper administration, of the State government ; i. e., a Judge of the Supreme or Superior. Court, ’ (for as the act is worded, these officers, although constituting a co-ordinate branch of the State government are required to entire themselves to exemption by the certificate of the Governor,) or a justice of the peace,'constable or County- Commissioner ? _ , ' ■ ■ •
The question is Stated broadly in order not'to raise the issue made' ”by the petitioner and return, as to whether Eus-sell, at the time of his appointment, was in actual Military •service, or only constructively so; for, assuming that Jibe .effect of the sentence of the court martial was not to^ismiss him from the service,-and subject him to .conscription de noto, but simply to deprive him of liis commission; and make him a private in the company of which he had been Captain,- I am óf opinion that his appointment to the office had' the effect of exempting him from military service-, both by force of the Constitution and of the act of Congress, and the certificate of the Governor in pursuance thereto. . .
The-authority of the government to' conscript is-derived from the,power conferred on CongresS'to “raise and support -armies this power, from the very nature of things* is subject,to the restriction,- that it shall not extend to the Governors, members of the Legislatures, Judges ■ or other •officers necessary for the proper- administration of the State-government ; for 'as the Confederate government is 'a creature of the States; it-is absurd to suppose that the intention was to make a grant of power -which would enable the. creature to destroy'its. creator, and cause. the existence of the States to he dependent on the pleasure of Congress.
*465 -Apart from this, tbe Act of Congres in general terms exempts “members of Congress, and of the several State. Legislatures and such other Confederate officers as, the President or the Governors gí the 'respective States may certify to be necessary for the'-proper administration of the. Confederate and State governments as the case may be.”
The province of decidin%-th&t officers are necessary for the proper administration of the State governments belongs’ to the Legislature. That body ’has deemed' it necessary td provide for the appointment and exemption of County Commissioners, (act of 1864) and in compliance therewith the Governor has certi fied, in -pursuance of the Act of Congress,that this officer was necessary. '
Will it be said the States must procure their-Governors, ' members of the Legislatures, Judges and other necessary officers fronf^amp.ng the citizens who are over the age of-conscription, or at all events those who are not -already in service* and cannot take-a man'out of the army to fill any of these offices ? On what ground is'this assumption based ? There is no such provision in the Constitution, 01; in the act of Congress, or iñ the-act of the Legislature,-and there is nothing from which, it can he implied-on tile contrary, the implication is directly against.it, and the Coarte cari-: not. presume-that it was th'e intention thus ¿0 narroiq the fldd ofselection in regard1 to. St ala'officers. * Nothing short of plain.and direct words could he allowed to -have that effect. The practice in such- cases,^ and tft legislation of Congress, whereby it- is provided that .a military 'officer may resign, when elected of appointed to a civil office in a State, confirm this conclusion and leave, nó' room" to question the, position that, a private, although in the ranks, whenever he is elected or appointed and is qualified and in=ducted into an office under the State, and the Governor certifies, in pursuance to the Act of Congress, becomes by the force and effect thereof exempted. *
The second ground taken in the return is also untenable; *466 The Court or Judge, in a proceeding of this nature, is not' at liberty to go behind, 'the record of the qualification and appointment of a party. ' The .validity of his appointment, .on the ground th'at Rdssel is under the age of 21 years, cannot be'impeached in this- collateral way. It can only be done by a quo warranto or other proceeding in which the matter pan he.put directly at i4sue, and the office be’adjudged, forfeited or vacated. * .
The writ of habeas corpus is used in cases like the present 'as a civil remedy for the purpose of having the liability of the petitioner to conscription adjudicated, for the-reasons given by me in Cain’s case. ■ I am of opinion that the Act of Congress suspending the writ of habeas* corpus does not .apply to this case. Since the decision in .Cain’s case I was gratified to find'that my conclusion is supported by* the opinion of Chief Justice Marshall in. the case” of Bollman and Swártwont. He-says that the clause of the Constitution which authorizes the suspension of the' writ' «applies only to the,'writ of habeas corpus ad subjiciendum, “the great yrit of right,” sued out by a person'who stands committed for some criminal or supposed criminal offence, and does not' embrace the interior. kinds of the writ, such as hábeas corpus ad testificandum and the like. I will also refer to the very lull and able argument filed by Mr. Moore in this-case. ...
I am of opinion that the return ofW. H. C. Whiting is insufficient, anH does nfit show that the petitioner is liable to military service. My conclusion is that he is entitled to exemption,, and should be discharged, the facts spt out in the return to the;contrary notwithstanding. ■.
R. .M. PEARSON, C. J..
Richmond Hill, July 25, 1864.